UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.  21-80107-CR-ROSENBERG

UNITED STATES OF AMERICA,

      Plaintiff,

vs.

DENNIS POLLARD,

      Defendant.

_____/

## DEFENDANT'S MOTION FOR DOWNWARD VARIANCE & SENTENCING MEMORANDUM

At 68 years old and in poor health, Dennis Pollard is not likely to survive his incarceration. He faces a mandatory minimum 10-year prison sentence because he solicited people he believed were women and children online to produce and send him sexually explicit images and videos to satisfy his own sexual desires - though he never touched or attempted to touch a child. If he does survive prison, studies show he is unlikely to reoffend in the future. Nonetheless, the Sentencing Guidelines recommend a life sentence and, in so doing, fail to distinguish between the least and worst offenders. The government will certainly seek significantly more than the mandatory minimum. Mr. Pollard asks this Court consider a light at the end of the tunnel, vary downward and sentence him to 120 months.

**A. Mr. Pollard will not likely survive his prison sentence.**

Mr. Pollard is a 68-year old man with serious medical conditions facing a 10-

year mandatory minimum.[1] (PSR ¶¶ 89-95, 119). On April 6, 2006, he suffered a massive stroke that left him partially paralyzed. (PSR ¶¶ 91, 95). He has high blood pressure, high cholesterol, and is morbidly obese. (PSR ¶¶ 91, 92, 94, 95). Prior to his arrest, his primary care physician was treating him for hypertensive heart disease with heart failure, folic acid deficiency, seizure disorder, hemiparesis (weakness or inability to move one side of the body), carotid artery disease, chronic obstructive pulmonary disease, esophagitis, eczema, diastolic heart failure, and atherosclerosis of the aorta. (PSR ¶ 95). In 2020, he was diagnosed with colon cancer and had part of his colon removed. (PSR ¶¶ 93, 95). At his last visit in April, his doctor recommended he undergo a follow-up colonoscopy, which he has not yet received. (PSR ¶ 95).

### B. Mr. Pollard suffers from several mental health issues and may be suffering from dementia.

In preparation for sentencing, undersigned counsel hired a psychiatrist, Dr. Charles Samenow, to evaluate Mr. Pollard for mitigation and risk of recidivism. *See* Exhibit A (Dr. Samenow's report, filed under seal). He found Mr. Pollard meets criteria for posttraumatic stress disorder, substance abuse disorder (alcohol and cocaine), major depressive disorder, hyper-sexuality, and a provisional diagnosis of

---

[1] Even a healthy 68-year old would be unlikely to survive a 10-year prison sentence. According to the National Center for Health and Statistics, the life expectancy for a male in the United States in 2020 was 75.1 years. Elizabeth Arias, Ph.D., Betzaida Tejada-Vera, M.S., and Farida Ahmad, M.P.H., NVSS Vital Statistics Rapid Release, *Provisional Life Expectancy Estimates for January through June, 2020*, Report No. 010, February 2021, available at: https://www.cdc.gov/nchs/data/vsrr/VSRR10-508.pdf. Each year in prison reduces an individual's life expectancy by two years. Emily Widra, Prison Policy Initiative, *Incarceration shortens life expectancy*, June 26, 2017, available at: https://www.prisonpolicy.org/blog/2017/06/26/life_expectancy/.

unspecified paraphilic disorder.  Mr. Pollard also demonstrated significant symptoms of an underlying neurocognitive disorder, noting multiple risk factors, including age, extensive substance-use history, high cholesterol and history of stroke. Dr. Samenow recommended Mr. Pollard serve his sentence in a medical facility.

### C. Mr. Pollard never touched or attempted to touch a child.

Mr. Pollard used Facebook to solicit online sexual relationships with individuals he thought were women and children. (PSR ¶ 10). During those relationships, he engaged in dominant-submissive roll play with them, described what he wanted to do to them sexually, requested they produce and send him child pornography, sent sexually explicit images to them, and offered financial incentive for their compliance with his requests for production. (PSR ¶¶ 11-36). He never physically threatened or extorted them. He never touched or attempted to touch them, nor did he attempt to meet them in person. His crimes occurred entirely in the privacy of his own home as he sat behind a computer screen alone.

While he did request the individuals with whom he spoke produce child pornography for him, the government has not identified any of the individuals Mr. Pollard contacted. As such, the government does not know whether he actually communicated with the individuals in the images he received or whether he communicated with someone pretending to be those people. In other words, the government does not know whether Mr. Pollard caused the production of new images or whether the images already existed and someone merely sent them to him.

**D. This Court can reasonably deter criminal conduct and protect the public without sending Mr. Pollard to prison for the rest of his life.**

In line with other studies, the Sentencing Commission has found one factor that negatively correlates with recidivism is the offender's age at the time of release. United States Sentencing Commission, *Recidivism Among Federal Offenders: A Comprehensive Overview*, 19-23 (2016) ("2016 Report"); United States Sentencing Commission, *The Effects of Aging on Recidivism Among Federal Offenders,* 30 (2017) ("December, 2017 Report") (finding "older offenders are substantially less likely to recidivate following release compared to younger cohorts"). The Commission found offenders 60 years old or older at the time of release had a re-arrest rate of just 16%, while the rate for offenders under 21 was more than 67%. *Id.* at 23.

Sexual offenders are no exception to this rule. At least one study found sexual offenders released after age 60 had a recidivism rate of just 3.8%, significantly lower than the 17.5% average for all sexual offenders. *See* R.K. Hanson, "Recidivism and Age: Follow-Up Data from 4,673 Sexual Offenders," *Journal of Interpersonal Violence*, 17, 1046-62 (October 1, 2002). And, other studies have consistently found sexual offenders are less likely to reoffend as they age. *See* S. Fazel, G. Sjostedt, N. Langstrom, & M. Grann, "Risk factors for criminal recidivism in older sexual offenders," *Sexual Abuse: A Journal of Research and Treatment*, 18, 159-167 (2006); R. Blanchard & H.E. Barbaree, "The Strength of Sexual Arousal as a Function of the Age of the Sex Offender: Comparisons Among Pedophiles, Hebephiles, and Teleiophiles," *Sexual Abuse: A Journal of Research and Treatment*, 17, 441-456

(2005); A.J.R. Harris & R.K. Hanson, "Sex Offender Recidivism: A Simple Question," (2004); R.K. Hanson, "Recidivism and Age: Follow-Up Data from 4,673 Sexual Offenders," *Journal of Interpersonal Violence*, 17, 1046-62 (October 1, 2002); R.K. Hanson, & M.T. Bussiere, "Predicting relapse: a meta-analysis of sexual offender recidivism studies," *Journal of Consulting and Clinical Psychology*, 66, 348-62 (April, 1998).

Though no one can predict whether Mr. Pollard in particular will reoffend upon release from prison, the government will likely ask this Court to decide that Mr. Pollard will always be too dangerous to release. Federal law provides a better option. The Adam Walsh Act permits the government to seek continued detention at the end of a sexual offender's prison sentence if it believes he remains sexually dangerous at that time. 18 U.S.C. § 4248. Thus, this Court need not decide today whether it must detain Mr. Pollard forever to protect society from him in the future. It can wait to see what impact a shorter, but still lengthy, prison sentence has on him before deciding whether he is too dangerous to release.

This Court can also order supervised release for the rest of Mr. Pollard's life, allowing probation to monitor his behavior with the constant threat of additional incarceration if he fails to comply. Moreover, regardless of any term of supervised release, federal law and all state laws require Mr. Pollard register as a sexual offender upon his release from prison. As such, any community in which he chooses to live will be aware of any remaining danger he may present and law enforcement

can monitor him accordingly. Simply stated, this Court need not incarcerate Mr. Pollard for the rest of his life to protect society from him.

### E. The Guidelines' recommendation of a life sentence for Mr. Pollard fails to distinguish between the least and worst offenders.

Section 2G2.2 is the applicable guideline in non-production-child-pornography cases. Nonetheless, probation has correctly applied it here, where Mr. Pollard committed both production and non-production offenses, because it yields a higher offense level than the otherwise applicable production guideline (section 2G1.3). In either case, the Guidelines suggest the same result: a life sentence.

Through the Guidelines, Congress sought "proportionality in sentencing." U.S.S.G. § 1A1.3. In other words, the Guidelines are supposed to distinguish between the least and worst offenders by recommending more severe sentences for the latter and less severe sentences for the former. The Sentencing Commission has long admitted section 2G2.2 does not achieve this goal. United States Sentencing Commission, *Report to Congress: Federal Child Pornography Offenses* iii (2012).

And, as the Commission reaffirmed recently, the guideline continues to fail because it imposes substantial increases to the guideline range using enhancements that are no longer uncommon or unique. United States Sentencing Commission, *Federal Sentencing of Child Pornography Non-Production Offenses* 4 (2021). For example, in 2019, 99.4% of offenders received an enhancement for having images of a prepubescent-minor, over 95% received an enhancement for use-of-a-computer, 84% received an enhancement for images of sadomasochism, and 77.2% received an

enhancement for possessing more than 600 images. *Id*. Mr. Pollard received all four of these enhancements resulting in a 13-level increase to his guideline range that does absolutely nothing to distinguish him from almost any other offender sentenced under this guideline. (PSR ¶¶ 59, 61, 63, 64). Assuming no other modifications, without this increase, Mr. Pollard's total offense level would have been 33, resulting in a guideline range of 135-168 months, well below the life recommendation he currently faces.

The Guidelines also would have suggested William Irey spend the rest of his life in prison, but for the government's decision to charge all of his criminal conduct in a single count.[2] Irey travelled to Cambodia and other Asian countries to rape, sodomize, and sexually torture more than fifty young girls between 4-6 years old for more than 5 years. *United States v. Irey*, 612 F.3d 1160, 1166 (2010). He purchased two or three at a time, recording their defilement and humiliation and then distributing them online. *Id*. at 1166-68. He received and performed oral sex on prepubescent girls, engaged in anal and vaginal intercourse with them, wrote on their bodies, bound them with duct tape, and inserted plastic glow sticks, dildos, cockroaches and candy into their vaginal cavities. *Id*. at 1167-68. His images showed him posing with them as trophies and smiling while he abused them. *Id*.

---

[2] Following a guilty plea, the district court sentenced Irey under section 2G2.1, the guideline applicable in production of child pornography cases. That guideline suffers the same infirmities section 2G2.2 suffers. *United States v. Jacob*, 631 F.Supp.2d 1099, 1104-1105 (N.D. Iowa 2009). Regardless, the point is the same: while Irey's behavior was significantly more egregious than Mr. Pollard's, the Guidelines do not distinguish between them.

Likewise, the Guidelines would have recommended a life sentence for Jack Dean.[3] Dean sexually abused his stepdaughter from the time she was eleven until she was twenty-seven, recording 243 total videos of her, more than 50 of which were while she was still a minor. *United States v. Dean*, 635 F.3d 1200, 1202 (11th Cir. 2011). When the abuse began, he recorded himself digitally and orally penetrating her vagina while she slept. *Id.* Later, he instructed his own minor daughters to record the victim naked, engaged in vaginal sex with her, and invited other men to join him. *Id.* He also beat her until she cried and begged him to stop. *Id.* at 1203. She required three rectal surgeries to repair damage he did to her during these encounters. *Id.* He coerced her compliance with threats to kill her, her mother, and her husband. *Id.* His final act of abuse occurred when he tied her to a wall and violently penetrated her vagina with a bottle. *Id.*

Though Mr. Pollard never touched or even tried to touch the victims in his case, the Guidelines treat him no differently than men, like Irey and Dean, who personally, repeatedly, and violently raped and tortured children and recorded their acts for their own pleasure. Moreover, neither his lack of significant criminal history nor his decision to accept responsibility yield him any relief. Even with a criminal history category I and a 3-level reduction for acceptance, his guideline range remains the same: life. This kind of absurd result explains why district courts have imposed below guidelines sentences almost 70 percent of the time in both production and non-

---

[3] It appears the district court also sentenced Dean, following his guilty plea, under section 2G2.1.

production cases.[4]

## F. "Mercy bears richer fruits than strict justice." ~ Abraham Lincoln

While "[m]ercy is seldom included on the list of "traditional" rationales for sentencing," section 3553 evinces Congress' intent – this Court should impose the "lowest possible penalty consistent with the goals of sentencing." *United States v Blarek*, 7 F. Supp. 2d 192, 210 (E.D.N.Y. 1998); *see also* 18 U.S.C. § 3553(a). "The notion that undue harshness should be avoided by those sitting in judgment has long been a part of the human fabric and spirit. Lenity is often the desirable route." *Id*. Here, Mr. Pollard knows he will likely spend the rest of his life in prison, regardless of what this Court decides. He simply asks for a light at the end of the tunnel.

---

[4] Undersigned counsel used the Sentencing Commission's Interactive Data Analyzer found at https://ida.ussc.gov/analytics/saw.dll?Dashboard to make this determination. To access the specific data, from the top ribbon menu, select "Guideline Application" hyperlink, then select "Sentences Relative to Guideline Range." From there, use the "Primary Guideline" filter to select both § 2G2.1 and section 2G2.2. Then scroll down to the *Sentences Imposed Relative to Guideline Range* data table for raw numbers and percentages.

WHEREFORE, the Defendant, DENNIS POLLARD, respectfully requests this Court grant this motion for a downward variance and sentence him to 120 months in the Bureau of Prisons.

Respectfully submitted,

MICHAEL CARUSO
FEDERAL PUBLIC DEFENDER

*s/Scott Berry*
Scott Berry, B.C.S.
Assistant Federal Public Defender
Attorney for Defendant
Bar Number: 0525561
450 South Australian Avenue
Suite 500
West Palm Beach, Florida 33401
Phone:  (561) 833-6288
Email:  *scott_berry@fd.org*

## **CERTIFICATE OF SERVICE**

I HEREBY certify that on January 28, 2022, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*s/ Scott Berry*
Scott Berry
